IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────

STEVEN A. CUCCI,

                        Plaintiff,

      vs.                              Civil Action No.
                                      6:04-CV-0139 (NAM/DEP)

JO ANNE B. BARNHART, Commissioner
of Social Security,

                       Defendant.

─────────────────────────────────────

APPEARANCES:                      OF COUNSEL:

FOR PLAINTIFF:

ANTONOWICZ LAW FIRM         PETER W. ANTONOWICZ, ESQ.
1300 Floyd Avenue
Rome, NY 13440-4600

FOR DEFENDANT:

HON. GLENN T. SUDDABY        WILLIAM H. PEASE, ESQ.
United States Attorney for the     Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

OFFICE OF GENERAL COUNSEL   BARBARA L. SPIVAK, ESQ.
Social Security Administration    Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278              SUSAN REISS, ESQ.
                                    Assistant Regional Counsel

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff Steven A. Cucci, who has in the past suffered from a form of cancer affecting his left leg and requiring several surgeries which included femur recession and internal prostheses with grafting, has commenced this proceeding to challenge the denial of his application for supplemental security income ("SSI") benefits under the Social Security Act (the "Act"). In support of his challenge, plaintiff asserts that the administrative law judge ("ALJ") who heard and determined the matter erred in concluding that his impairment did not meet or equal a presumptively disabling listed impairment relating to fractures of the femur.  Plaintiff also argues the ALJ's conclusion that he is capable of performing a full range of sedentary work, with some limitation including the inability to work around hazards such as moving machinery or at heights, is not supported by substantial evidence and, accordingly, his finding, based upon application of the medical-vocational guidelines set forth in the applicable regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "grid"), of no disability was erroneous.

Having carefully reviewed the record in light of plaintiff's arguments,

I find that the ALJ's determination resulted from the application of proper legal principles, and is supported by substantial evidence in the record. I therefore recommend the entry of judgment on the pleadings dismissing plaintiff's complaint.

I.    BACKGROUND

Plaintiff was born on January 21, 1979; at the time of the second hearing in this matter, held on January 9, 2002, plaintiff was twenty-two years old. Administrative Transcript at pp. 72, 636.[1] Plaintiff is not married and, at the times relevant to his claims, has been a student – initially in high school, and later locally at LeMoyne College. AT 72, 636-38. Plaintiff has also engaged in part-time employment with two local retail establishments, working two to three days each week for between four and five hours each day.[2] AT 638-40.

In January of 1995, plaintiff began experiencing severe pain in his

_____

[1]    Portions of the administrative transcript, Dkt. No. 3, filed by the Commissioner together with her answer, will be cited herein as "AT __."

[2]    The record is equivocal regarding the reason for plaintiff's leaving his employment with Dick's Sporting Goods, the latter of two part-time employers. During the hearing, plaintiff attributed his resignation from Dick's to an inability to perform the functions required to assist customers in finding product. AT 661. When discussing the matter with one of his treating physicians, however, plaintiff recounted that he would have returned there to work following his surgery but instead left the employ of Dick's as a result of a cutback in employee hours. *See* AT 589.

-3-

left leg.  AT 640.  Efforts by health care providers, including at the Utica

Hospital emergency room, to address the problem were unsuccessful.

*See* AT 641-43.  Plaintiff was diagnosed in October of 1995 as suffering

from Ewing's sarcoma of the left femur, based upon results of x-ray testing

revealing the presence of a tumor.[3]  AT 452-55.  Initial treatment of the

disease included a year long regimen of chemotherapy, beginning in

November of 1995, and an operation performed on February 14, 1996 at

Massachusetts General Hospital in Boston, Massachusetts involving a

wide excision and allograft reconstruction with hardware.  AT 126, 285,

452-55.  By all accounts plaintiff recovered well from his surgery, to a

point where he was able to walk with the aid of crutches in September and

October of 1996, with the ability for partial weight bearing of thirty to forty

pounds, AT 285, 289, and in or about February of 1997 was capable of

ambulating without the use of crutches.  AT 647-48; *see also* AT 243, 246,

---

[3]     Ewing's sarcoma is

a highly malignant, metastatic, primitive small round cell tumor of bone,
usually occurring in the diaphyses of long bones, ribs, and flat bones of
children and adolescents.  It is characterized by saucerization of the
cortex, patchy, permeative destruction, and often a large soft tissue
mass; the most common symptoms include pain, swelling, leukocytosis,
and fever.

Dorland's Illustrated Medical Dictionary 630, 1600, 1896 (29th ed. 2000).

385.  In March of 1997 plaintiff was cleared by his surgeon, Dr. Mark C.
Gebhardt, to play golf.  AT 347-48.

On January 6, 1998 plaintiff underwent a second surgical procedure
to address the fact that the cadaver femur placed in his left leg was not
healing properly, placing undue stress on the plates and screws in his leg.
AT 375-76, 392, 395, 576, 649.  According to records associated with that
surgery, plaintiff was able to ambulate independently during physical
therapy four days post surgery.  AT 394.  Three months later, in April of
1998, plaintiff's physical therapist noted that he was able to bear up to
sixty pounds on his left leg with the assistance of crutches.  AT 468, 481,
484.  In August of that year plaintiff was reported to be eighty percent
partial weight bearing with crutches, and able to walk two hours without
rest.  AT 487-88.  A week later, plaintiff was considered to be one hundred
sixty pounds weight bearing.  AT 493.

Following his January, 1998 operation, plaintiff did well until in
March of 1999 he began experiencing increased thigh pain.  AT 557.  X-
rays revealed a fracture of the allografted left femur, requiring an
additional surgery to remove hardware, perform revision of the DCS plate,
and revascularize his fibular graft.  *Id.*

Plaintiff again did well following this surgery until experiencing increased left thigh discomfort.  AT 557.  X-rays revealed a new fracture through the distal portion of the allograft, requiring a left distal femoral replacement.  *Id.*; *see also* AT 505, 584.  Following the surgery, plaintiff stated that he felt "pretty comfortable."  AT 505-06.  Plaintiff was given wooden crutches to go home, and reported minimal pain in his left leg.  AT 513.

Plaintiff again underwent surgery on October 5, 2000 for patellar resurfacing, to address pain experienced by him in his left knee.  AT 589, 653.  A report of an office visit from four months later on February 21, 2001, reflects that by that time plaintiff's knee pain had subsided, and he plaintiff was "walking without any ambulatory aides [sic]."  AT 589.

In April of 2001 plaintiff reported experiencing renewed pain in his left knee, as well as in his hip.  AT 592.  Plaintiff's hip pain was diagnosed as "[p]robable plate bursitis, left hip, with involvement of the greater trochanteric bursa", for which an injection of Depo-Medrol was administered.  *Id.*

Reports of a subsequent office visit to Dr. Timothy A. Damron, an oncologist, on October 19, 2001 reflect that plaintiff has remained

"disease free" since his initial onset and treatment, with no more than "the usual minor aches and pains about his left knee."  AT 593.  During that visit plaintiff's range of motion was found to be good, with some pain associated with that motion, and the presence of low back pain "most likely related to paraspinous muscle strain" was noted, for which physical therapy was prescribed.  *Id.*

On March 21, 2002 plaintiff underwent surgery, described as a "left total knee arthroplasty revision".  AT 613-14.  That surgery appears to have been successful, and plaintiff was subsequently discharged to be "weight bearing as tolerated on his left total knee arthroplasty."  *Id.*  During an examination conducted a short time later on April 5, 2002, plaintiff was found to be well healed with "good range of motion of his knee and good strength."  AT 609.  Upon his return to see Dr. Damron on July 3, 2002, plaintiff reported that he was not using any ambulatory aids and was found, upon examination, to have good heel and toe walking.  AT 607.

On July 13, 2002, while shopping at a local mall, plaintiff reinjured himself when stepping off a stair, causing a sharp pain in his left thigh.  AT 612.  Upon admission to University Hospital plaintiff was found to be suffering from a periprostatic left femur fracture, and subsequently

-7-

underwent surgery on July 15, 2002 for open reduction, internal fixation of

the left femur fracture with periprostatic bone grafting on July 15, 2002.

*Id.*  Upon his discharge plaintiff was directed to remain "touch down weight

bearing" for six weeks, and to use crutches for ambulation.  AT 613; *see*

*also* AT 618-23.  Four months later, plaintiff was advised by Dr. Damron to

advance to a single crutch, and to increase his weight bearing by twenty

to thirty pounds per week over the following several weeks.  AT 600, 601.

Plaintiff was cleared to return to his desk job on August 30, 2002.  AT 604.

While by all accounts recovery from the July 15, 2002 surgery was

uneventful, a communication dated March 21, 2003 from plaintiff's treating

physician, Dr. Damron, reflects the existence of new failures and suggests

the need for further surgery.  AT 627-28.

II.   PROCEDURAL HISTORY

   A.   Proceedings Before The Agency

   Plaintiff filed an application for SSI benefits in February 4, 1997.  AT

72-75.  That application was denied, both initially and upon

reconsideration.  AT 27-30, 33-35.

   At plaintiff's request, a hearing was conducted on May 6, 1998 to

address the denial of plaintiff's application for SSI benefits.  AT 669-85.

Following that hearing ALJ John R. Tarrant issued a determination, dated May 28, 1998, finding that plaintiff was not disabled, and thus upholding the agency's denial of benefits.  AT 49-59.

On review, at plaintiff's request, the Social Security Administration Appeals Council issued a decision on June 18, 2001 remanding the matter for further proceedings based upon submission of additional, material evidence which was not before the ALJ.  AT 61-63.

Following the remand, ALJ Tarrant conducted a second hearing on January 9, 2002.  AT 633-85.  After the close of that hearing, ALJ Tarrant issued a decision on May 13, 2002, again concluding that plaintiff was not disabled.  AT 16-23.  In his second decision, applying the familiar, five step test for determining disability, ALJ Tarrant concluded at step one that notwithstanding his occasional, part-time employment, plaintiff had not engaged in substantial gainful employment during the relevant periods. AT 17.  Evaluating the medical evidence, ALJ Tarrant next found that plaintiff suffers from an impairment of sufficient severity to satisfy the requirements of step two but that the impairment did not meet or equal any of the presumptively disabling listed impairments.  AT 19.

ALJ Tarrant next weighed the medical evidence in the record as well

as plaintiff's testimony to determine his residual functional capacity ("RFC"), finding that plaintiff is capable of meeting the exertional demands of sedentary work, diminished by virtue of his inability to push and/or pull with his legs, and additionally finding that his limitations preclude him from working around hazards such as moving machinery or at heights.  AT 20-21.  In arriving at his RFC determination, ALJ Tarrant rejected plaintiff's subjective testimony regarding his limitations as not fully credible given his activities, which have included playing golf, taking a trip to Alaska, attendance at college, and working as a cashier.[4]  AT 20.  The ALJ also concluded that plaintiff's statements regarding his limitations were inconsistent with reports of his examining professionals.  AT 20.  Applying his RFC finding to the grid, after concluding that plaintiff has no past relevant work history, the ALJ concluded that a finding of no disability was warranted under rule 201.27 thereof.  AT 21.

The ALJ's opinion became a final determination of the agency when, on December 17, 2003, the Appeals Council denied plaintiff's request for review of that decision.  AT 8-10.

B.    This Action

---

[4]    In July of 1997, plaintiff took an approximately one week trip to Alaska, apparently as a recipient of a Make-a-Wish conferral.  AT 352, 654-55.

Plaintiff commenced this action on February 6, 2004.  Dkt. No. 1.

Issue was thereafter joined by the Commissioner's filing on May 17, 2004

of an answer, accompanied by an administrative transcript of proceedings

before the agency.  Dkt. Nos. 2, 3.  With the filing of plaintiff's brief on

December 17, 2004, Dkt. No. 12, and that on behalf of the Commissioner

on January 19, 2005, Dkt. No. 13, the matter is now ripe for determination,

and has been referred to me for the issuance of a report and

recommendation, pursuant to 28 U.S.C. §§ 636(b)(1)(B) and Northern

District of New York Local Rule 72.3(d).[5]  *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

        A.    Scope of Review

        A court's review under 42 U.S.C. § 405(g) of a final decision by the

Commissioner is limited; that review requires a determination of whether

the correct legal standards were applied, and whether the decision is

supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586

---

[5]        This matter has been treated in accordance with the procedures set forth
in General Order No. 18 (formerly, General Order No. 43) which was issued by the
Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998,
and amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on
September 19, 2001.  Under that General Order an action such as this is considered
procedurally, once issue has been joined, as if cross-motions for judgment on the
pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil
Procedure.

(2d Cir. 2002); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp.2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, her decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Martone*, 70 F. Supp.2d at 148.  If, however, the correct legal standards have been applied and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13 F. Supp.2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197,

229, 59 S. Ct. 206, 217 (1938)).  To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record.  *Id.*; *Martone*, 70 F. Supp.2d at 148 (citing *Richardson*).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed.  42 U.S.C. § 405(g); *see Martone*, 70 F. Supp.2d at 148.  In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning. *Martone*, 70 F. Supp.2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be

-13-

considered at the agency level.  *See Lisa v. Secretary of Dep't of Health & Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *Parker*, 626 F.2d at 235; *Simmons v. United States R.R. Retirement Bd.*, 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Secretary of Health & Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).

      B.    <u>Disability Determination: The Five Step Evaluation Process</u>

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.] "  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a

-14-

> specific job vacancy exists for him, or whether he
> would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled". *Martone*, 70 F. Supp.2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an

assessment of whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp.2d at 150.

C.    The Evidence in this Case

_____Plaintiff raises two principal arguments in support of his challenge to the agency's finding of no disability.  First, he asserts that at step three of the prevailing disability test the ALJ should have concluded that his condition equals listing 1.06, which relates to fractures of the femur. Plaintiff further maintains that even if the ALJ properly rejected the

-16-

conclusion that his condition did not equal section 1.06 of the listings, the

ALJ nonetheless mistakenly found that he retains the ability to perform a

full range of sedentary work, arguing that this finding overlooks the

realities of the workplace and the uncertainties associated with his future

condition, as chronicled by his health care providers.

     1.    Listing Section 1.06

By regulation, the Commissioner has set forth a series of listed

impairments describing a variety of physical and mental conditions,

indexed according to the body system affected.[6]  20 C.F.R. Pt. 404,

Subpt. P, App. 1; *see Sullivan v. Zebley*, 493 U.S. 521, 529-30, 110 S. Ct.

885, 891 (1990).  The listed impairments are presumptively disabling –

"[t]hat is, if an adult is not actually working and his [or her] impairment

matches or is equivalent to a listed impairment, he [or she] is presumed

unable to work and is awarded benefits without a determination whether

he [or she] actually can perform his [or her] own prior work or other work."

*Zebley*, 493 U.S. at 532, 110 S. Ct. at 892 (citing *Bowen v. Yuckert*, 482

---

    [6]    The listings are broken down into fifteen categories, including growth impairment, musculoskeletal system, special senses and speech, respiratory system, cardiovascular system, digestive system, genitourinary impairments, hematological disorders, skin disorders, endocrine system, impairments that affect multiple body systems, neurological, mental disorders, malignant neoplastic diseases, and immune system.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.

U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987)).

At step three of the now familiar, five part analysis, an ALJ must determine whether the condition from which a claimant suffers meets or equals a listed impairment.  20 C.F.R. §§ 404.1520(d), 416.920(d); *Martone*, 70 F.Supp.2d at 149 (citing *Ferraris*, 728 F.2d at 584).  Plaintiff does not argue that his condition meets section 1.06 of the listing; instead, he asserts equivalency.

"For a claimant to qualify for benefits by showing that his [or her] unlisted impairment, or combination of impairments, is "equivalent" to a listed impairment, he [or she] must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment."  *Sullivan v. Zebley*, 493 U.S. 521, 531, 110 S. Ct. 885, 891 (1990) (citing 20 C.F.R. § 416.926(a)) (emphasis in original).  "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his [or her] unlisted impairment or combination of impairments is as severe as that of a listed impairment.  *Zebley*, 493 U.S. at 531, 110 S. Ct. at 892 (citation omitted).

The governing listing in this case applies, in relevant part, to femur fractures with

A.     Solid union not evident on appropriate medically acceptable imaging and not clinically solid;

and

B.    Inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur or is not expected to occur within 12 months of onset.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.06.  Ambulation, in turn, is

addressed by the regulations as follows:

b.    What We Mean by Inability to Ambulate Effectively

(1)    Definition.  Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities.  Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the function of both upper extremities. . . .

(2)    To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine

> ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.  The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Id.* § 1.00(B)(2)(b).

The ALJ's rejection of the applicability of Listings § 1.06 is supported by substantial evidence in the record.  While it is true that following his initial surgery in February of 1996 the plaintiff suffered several setbacks, adversely affecting his ability to ambulate, the only extended period of non-ambulation evidenced in the record was the period following that surgery.  *See* AT 285, 289, 647-48; *see also* AT 243, 246, 385.  The record firmly reflects, however, that within twelve months of that surgery plaintiff no longer needed crutches to assist him in walking.  *Id.*  None of the other surgeries resulted in a recuperative period with similar, extended limitations in plaintiff's ability to ambulate for more than twelve months.

### 2.  The ALJ's RFC Finding

Plaintiff also assails the ALJ's sedentary work RFC finding in support of his challenge to the determination of no disability.[7]  The ALJ's

---

[7]     Sedentary work is defined by regulation as follows:

Sedentary work involves lifting no more than 10 pounds at

RFC finding including a determination that plaintiff is able to sit for six hours in an eight hour work day; can stand and/or walk for four hours over a similar period; cannot push or pull with his legs; and can lift up to ten pounds.  *See* AT 20-21.

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue.  20 C.F.R. § 404.1545(a).  An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis.  *Id.*; *Martone*, 70 F.Supp.2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess plaintiff's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull.  20 C.F.R. § 404.1569a.

---

> a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).  In addition, a subsequent ruling has clarified that sedentary work generally involves periods of standing or walking for a total of two hours in an eight hour work day, with sitting up to a total of approximately six hours in a similar period.  *See* Social Security Ruling 83-10.

-21-

Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered. 20 C.F.R. § 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e).  When making an RFC determination, an ALJ must specify those functions which the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice. *Martone*, 70 F.Supp.2d at 150 (citing *Ferraris,* 728 F.2d at 587).  An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations.  *Martone*, 70 F.Supp.2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F.Supp. 300, 309-10 (E.D.N.Y. 1997).

In this instance essential elements of the ALJ's RFC finding are supported by substantial evidence in the record.  In March of 1998, for example, plaintiff's surgeon, Dr. Gebhardt, noted that plaintiff had no limitation with regard to sitting, and that once healed he would be able to lift up to ten pounds.  AT 380-81.  Dr. Gebhardt also noted that while limited during the recuperative period, when healed plaintiff would be able to stand and/or walk for between two and four hours in an eight hour

workday.[8]  AT 380-81.

The RFC finding is also supported by opinions of plaintiff's

oncologist, Dr. Damron, who in April of 1998 reported that plaintiff could

lift up to ten pounds frequently; could stand and/or walk a total of one and

one-half hours in an eight hour workday, at interrupted intervals, and could

sit for eight hours in an eight hour workday, in four hour segments.[9]  AT

402-03.  Similarly, Dr. Kennedy, another of plaintiff's health care

providers, opined in June of 1998 that plaintiff's ability to sit, stand and/or

walk were not affected by his impairment, deferring to plaintiff's orthopedic

surgeon for more details regarding his capabilities.  AT 497-99.  Likewise,

plaintiff's physical therapist noted in April of 1998 that plaintiff was able to

walk for two hours without rest.  AT 487.  On October 19, 2001 plaintiff

reported to Dr. Damron that for the most part his leg was doing fine.  AT

593.  Six weeks post-surgery, on August 30, 2003, Dr. Damron cleared

the plaintiff to return to his desk job.  AT 604.

These reports are supplemented by plaintiff's activities, all of which

---

[8]       Dr. Gebhardt did advise plaintiff to avoid hazardous conditions such as heights, moving machinery and situations where he would be susceptible of falling.  AT 382.  These limitations were taken into account in the ALJ's RFC finding.  *See* AT 21.

[9]       With regard to standing and/or walking, Dr. Damron noted that plaintiff would need crutches for walking until his injuries were healed.  AT 403.

are consistent with his ability to perform sedentary work.  Those activities

include attendance at college; working as a cashier at local stores; going

to the movies; going out to eat; fishing; and spending time with friends.

AT 117, 637-39.

In sum, the ALJ's RFC finding that plaintiff retained at the relevant

times the ability to perform sedentary work is supported by substantial

evidence.

IV.    SUMMARY AND RECOMMENDATION

_____Plaintiff suffers from the residual effects of Ewing's sarcoma and

reconstruction of his left femur on February 14, 1996.  It is true, moreover,

that since the onset of that condition and his initial surgery plaintiff has

suffered several setbacks, resulting in additional surgeries to perform

repairs associated with that initial operation.  Notwithstanding plaintiff's

argument to the contrary, however, his condition does not meet or equal

that of Listing 1.06, which relates, *inter alia*, to femur fractures, since he

cannot satisfy the requirement that he was unable to ambulate for any

period of at least twelve months.

The ALJ's finding that plaintiff retains the ability to perform a full

range of sedentary work, with minor exceptions, is fully supported by

substantial evidence in the record.  Having made that finding, the ALJ properly concluded at step five of the inquiry that a finding of no disability was required after consideration of the grid.[10]

Based upon the foregoing, it is hereby

RECOMMENDED that defendants' motion for judgment on the pleadings be GRANTED, the Commissioner's determination of no disability AFFIRMED, and plaintiff's complaint DISMISSED in its entirety.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties may file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within TEN days. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

---

[10]     In his brief, plaintiff does not challenge the ALJ's resort to the grid as opposed to eliciting testimony from a vocational expert in order to carry the Commissioner's burden at step five of the governing, sequential analysis.

It is further ORDERED that the Clerk of the Court serve a copy of

this Report and Recommendation upon the parties by regular mail.


Dated:      January17, 2006
            Syracuse, NY

David E. Peebles
U.S. Magistrate Judge


G:\socialsecurity\cucci.wpd